# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
### WHITE PLAINS DIVISION

```
-------------------------------------------------------- X
                                                         :
JENNIFER RAND, individually and on behalf of             :
a class similarly situated,                              :
                                                         :
                              Plaintiff,                 :
                                                         :   No. 7:21-cv-10744-VB
                  v.                                     :
                                                         :
THE TRAVELERS INDEMNITY COMPANY,                         :
                                                         :
                              Defendant.                 :
-------------------------------------------------------- X
```

**DEFENDANT THE TRAVELERS INDEMNITY COMPANY'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

ALSTON & BIRD LLP

Kristine McAlister Brown (*pro hac vice*)
Donald M. Houser (*pro hac vice*)
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
E-mail: kristy.brown@alston.com
            donald.houser@alston.com

Christopher J. Borchert
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9548
Facsimile: (212) 210-9444
E-mail: christopher.borchert@alston.com

*Counsel for Defendant The Travelers
Indemnity Company*

# <u>TABLE OF CONTENTS</u>

Page(s)

I.   INTRODUCTION ............................................................................................... 1

II.  BACKGROUND AND COMPLAINT ALLEGATIONS...................................... 3

III. LEGAL STANDARD........................................................................................... 4

IV.  ARGUMENT AND CITATIONS TO AUTHORITY .......................................... 5

    A.  Plaintiff Lacks Article III Standing. ............................................................ 5

        1.  Plaintiff's Alleged Risk of Future Identity Theft and Mitigation Efforts Are Not Injury In Fact for Article III Standing...................................................... 6

        2.  Plaintiff's DPPA Claim Does Not Establish Injury In Fact..................................... 9

        3.  Plaintiff's Alleged Diminished Value of Her Driver's License Number Is Not Injury In Fact............................................................................. 10

    B.  Plaintiff Does Not State a Claim Upon Which Relief Can Be Granted. ...................... 11

        1.  Plaintiff's DPPA Claim Fails............................................................... 11

        2.  Plaintiff's Negligence Claim Should Be Dismissed. ............................................ 15

        3.  Plaintiff's Negligence Per Se Claims Fail for Multiple Reasons........................... 18

        4.  Plaintiff Fails to State a Claim Under N.Y. Gen. Bus. Law Section 349. ............ 20

        5.  Plaintiff's Claim for Declaratory and Injunctive Relief Should Be Dismissed. .... 22

V.   CONCLUSION.................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abdale v. N. Shore-Long Is. Jewish Health Sys., Inc.*,
    19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015) ........................................................15, 19, 21

*Allen v. Vertafore, Inc.*, No. 4:20-cv-04139, 2021 U.S. Dist. LEXIS 114106
    (S.D. Tex. June 14, 2021), *report and recommendation adopted*,
    2021 U.S. Dist. LEXIS 138464 (S.D. Tex. July 23, 2021) ....................................13

*Allen v. Vertafore, Inc.*,
    No. 21-20404, 2022 U.S. App. LEXIS 6482 (5th Cir. Mar. 11, 2022) ..................14

*In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*,
    No. 19-md-2904, 2021 U.S. Dist. LEXIS 240360 (D.N.J. Dec. 16, 2021) ............20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................3, 5, 6, 17

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ......................................................................................3

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) ...................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................5

*In re Brinker Data Incident Litig.*,
    No. 3:18-cv-686, 2020 U.S. Dist. LEXIS 247918 (M.D. Fla. Jan. 27, 2020) ........15

*Chambliss v. CareFirst, Inc.*,
    189 F. Supp. 3d 564 (D. Md. 2016) ......................................................................10

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ......................................................................................4, 6, 8, 9

*Cohen v. Northeast Radiology, P.C.*,
    No. 20 CV 1202 (VB), 2021 U.S. Dist. LEXIS 16497
    (S.D.N.Y. Jan. 28, 2021) .......................................................................................19

*Condon v. Reno*,
    155 F.3d 453 (4th Cir. 1998), *rev'd on other grounds*, 528 U.S. 141 (2000).........10

*Enslin v. Coca-Cola Co.*,
    136 F. Supp. 3d 654 (E.D. Pa. 2015) ........................................................11, 13, 14, 15

*Estevez v. Consol. Bus Transit, Inc*.,
  No. 15-CV-7364 (RA), 2016 U.S. Dist. LEXIS 79766
  (S.D.N.Y. June 20, 2016)..........................................................................................22

*Fazi v. United States*,
  935 F.2d 535 (2d Cir. 1991)......................................................................................16

*Fero v. Excellus Health Plan, Inc*.,
  236 F. Supp. 3d 735 (W.D.N.Y. 2017) .....................................................................18

*Foster v. Health Recovery Servs.*,
  493 F. Supp. 3d 622 (S.D. Ohio 2020) .....................................................................14

*Gale v. IBM*,
  781 N.Y.S.2d 45 (N.Y. App. Div. 2004) ...................................................................21

*In re GE/CBPS Data Breach Litig*.,
  No. 20-CV-2903 (KPF), 2021 U.S. Dist. LEXIS 146020
  (S.D.N.Y. Aug. 4, 2021) ...........................................................................................19

*Gordon v. Softech Int'l, Inc.*,
  726 F.3d 42 (2d Cir. 2013).........................................................................................11

*Gulsvig v. Mille Lacs County*,
  No. 13-1309, 2014 U.S. Dist. LEXIS 43951 (D. Minn. Mar. 31, 2014) ..................14

*Hammond v. Bank of N.Y. Mellon Corp*.,
  No. 08 Civ. 6060, 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010)...................16, 17

*Hill v. Curcione*,
  657 F.3d 116 (2d Cir. 2011)..........................................................................................3

*IGEN, Inc. v. White*,
  672 N.Y.S.2d 867 (N.Y. App. Div. 1998) .................................................................16

*Khan v. Children's Nat'l Health Sys.*,
  188 F. Supp. 3d 524 (D. Md. 2016) .............................................................................7

*Kiminski v. Hunt*,
  No. 13-185, 2013 U.S. Dist. LEXIS 157829 (D. Minn. Sept. 20, 2013)..................14

*KM Enterprises, Inc. v. McDonald*,
  No. 11-cv-5098, 2012 U.S. Dist. LEXIS 138599 (E.D.N.Y. Sept. 25, 2012) ..........22

*Lanfranchi v. Grille*,
  98 N.Y.S.3d 470 (N.Y. App. Div. 2019) ...................................................................16

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)................................................................4, 5

*Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*,
    19 F.4th 58 (2d Cir. 2021) ...............................................................6

*McMorris v. Carlos Lopez & Associates., LLC*,
    995 F.3d 295 (2d Cir. 2021)...............................................................6

*Miller v. Wells Fargo Bank, N.A.*,
    994 F. Supp. 2d 542 (S.D.N.Y. 2014)............................................20

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)............................................................................6

*Oden v. Bos. Sci. Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) ...........................................21

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (N.Y. 1995) ...............................................................20

*Ovitz v. Bloomberg L.P.*,
    18 N.Y.3d 753 (N.Y. 2012) ............................................................21

*Pasternack v. Lab. Corp. of Am.*,
    892 F. Supp. 2d 540 (S.D.N.Y. 2012)............................................15

*In re Practicefirst Data Breach Litig.*,
    No. 1:21-CV-00790(JLS/MJR), 2022 U.S. Dist. LEXIS 19272
    (W.D.N.Y. Feb. 1, 2022) ....................................................7, 9, 10

*Prignoli v. Bruczynski*,
    No. 20-CV-907 (MKB), 2021 U.S. Dist. LEXIS 186052
    (E.D.N.Y. Sept. 28, 2021)................................................................19

*Provost v. Aptos, Inc.*,
    No. 1:17-cv-02120, 2018 WL 1465766 (N.D. Ga. Mar. 12, 2018) .........................10

*Pulka v. Edelman*,
    40 N.Y.2d 781 (N.Y. 1976) ............................................................16

*Sackin v. Transperfect Glob., Inc.*,
    278 F. Supp. 3d 739 (S.D.N.Y. 2017)............................................15

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
    45 F. Supp. 3d 14 (D.D.C. 2014) ....................................................7

*Shafran v. Harley-Davidson*,
   No. 07 Civ. 01365, 2008 U.S. Dist. LEXIS 22494 (S.D.N.Y. Mar. 24, 2008)................18, 21

*Smahaj v. Retrieval-Masters Creditors Bur., Inc.*,
   131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020) .........................................................................19, 21

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)............................................................................................................5, 10

*Storm v. Paytime, Inc.*,
   90 F. Supp. 3d 359 (M.D. Pa. 2015) ......................................................................................7

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (U.S. 2021).............................................................................................6, 9, 10

*Tsao v. Captiva MVP Rest. Partners, LLC*,
   986 F.3d 1332 (11th Cir. 2021) ..............................................................................................9

*Wallace v. Health Quest Sys.*,
   No. 20 CV 545, 2021 U.S. Dist. LEXIS 54557 (S.D.N.Y. Mar. 23, 2021)......................17, 18

*Warth v. Seldin*,
   422 U.S. 490 (1975)............................................................................................................4, 5, 6

*Willey v. J.P. Morgan Chase, N.A.*,
   No. 09-CV-1397 (CM), 2009 U.S. Dist. LEXIS 57826
   (S.D.N.Y. July 7, 2009) ........................................................................................................19

**Statutes**

Driver's Privacy Protection Act, 18 U.S.C. §§ 2721 *et seq.*................................................... *passim*

Federal Trade Commission Act, 15 U.S.C. § 45 ...............................................................2, 18, 19

N.Y. Gen. Bus. Law § 349.............................................................................................2, 20, 21, 22

N.Y. Shield Act, N.Y. Gen. Bus. Law §§ 899-aa *et seq.* ...................................................2, 18, 19

**Other Authorities**

Federal Rule of Civil Procedure 12 ...............................................................................4, 5, 10

Restatement (Second) of Torts § 652D............................................................................................9

U.S. Gov. Accountability Office, GAO-07-737 Highlights, Personal Information
   (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.........................................................8

## I.   <u>INTRODUCTION</u>

This case arises out of a crime perpetrated against Defendant The Travelers Indemnity Company ("Travelers") in which an unauthorized party illegally accessed Travelers' systems and stole certain personal information (the "Cyber Incident").  Although Travelers was indisputably the victim of this criminal attack, Plaintiff alleges that Travelers violated the law in multiple ways by falling victim to the crime, including the incredulous claim that Travelers *knowingly disclosed* her information in violation of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721 *et seq.* (the "DPPA").  But square pegs do not fit into round holes, and Plaintiff's Amended Class Action Complaint, ECF No. 20 ("Amended Complaint" or "Am. Compl."), should be dismissed for numerous reasons:

- *First,* Plaintiff does not plausibly allege an injury in fact as required to establish Article III standing to sue in federal court.  In particular, Plaintiff does not plausibly allege any actual harm or losses but relies instead on a hodgepodge of other supposed injuries – including an alleged increased risk of identity theft and the alleged violation of the DPPA – none of which is an injury in fact under Supreme Court precedent.

- *Second,* Plaintiff fails to state a plausible claim for relief under the DPPA.  Civil liability arises under this statute only where the defendant *knowingly discloses* the plaintiff's information.  Suffering a theft is not the same thing as making a knowing disclosure.  Not surprisingly, no court has ever found that a plaintiff stated a viable DPPA claim under circumstances like those alleged here.

- *Third,* Plaintiff's negligence claim fails because Travelers does not owe Plaintiff a common law duty to safeguard her information from criminal theft by a third party, and Plaintiff does not allege cognizable damages.  Duty and cognizable damages are essential elements

of a negligence claim under New York law, and Plaintiff's failure to plausibly allege either dooms this claim.

- *Fourth,* numerous state and federal courts applying New York law have rejected negligence per se claims based on violations of the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"), and the New York "Stop Hacks and Improve Electronic Data Security" Act, N.Y. Gen. Bus. Law § 899-aa *et seq.* (the "NY Shield Act") because those statutes do not provide for a private right of action.  Plaintiff's negligence per se claims based on alleged violations of these statutes should therefore be dismissed.  Plaintiff's negligence per se claim based on an alleged violation of the DPPA should be dismissed as well because Plaintiff fails to state a viable claim for relief under that statute as noted above.

- *Fifth,* Plaintiff's allegations that Travelers violated N.Y. Gen. Bus. Law § 349 ("Section 349") by making material misrepresentations and omissions about its data security fail.  To state a claim for relief under Section 349, Plaintiff must plausibly allege not only a deceptive act but also that the deceptive act *caused* <u>her</u> alleged injuries.  Here, Plaintiff does not and cannot plausibly allege the causation element of Section 349 because she does not allege any dealings or interactions with Travelers where representations about data security were made or should have been made.  Indeed, Plaintiff does not allege any dealings or interactions with Travelers whatsoever.  As a result, any supposed deception by Travelers based on what it represented or did not represent about security could not have injured Plaintiff, and her Section 349 claim should be dismissed.

- *Sixth,* Plaintiff's claim for declaratory and injunctive relief must be dismissed because these are remedies, not independent causes of action.

For each of these reasons and as set forth in more detail below, the Court should grant Travelers' Motion and dismiss the Amended Complaint.  Because Plaintiff has already amended her complaint once, the Court should dismiss the Amended Complaint *with prejudice*.  *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("Where a proposed amendment would be futile, leave to amend need not be given.") (citation omitted).

## II.      BACKGROUND AND COMPLAINT ALLEGATIONS[1]

Plaintiff filed her original complaint after Travelers notified her of the Cyber Incident, in which an unauthorized third party used stolen agent credentials to illegally access Travelers' secure agent portal and, once inside, potentially accessed Plaintiff's personal information.  *See* Am. Compl. ¶ 84; *see also* Declaration of Christopher J. Borchert ("Borchert Decl."), Exhibit A ("Notice Letter").[2]  The type of information potentially accessed includes Plaintiff's name, address, date of birth, and driver's license number.  *Id.*

Travelers' prior motion to dismiss identified numerous reasons why Plaintiff's claim should be dismissed.  Rather than responding, Plaintiff filed the Amended Complaint – this time alleging that she was the victim of an additional fraudulent scheme.  Plaintiff vaguely alleges that an unauthorized party who was already in possession of her personal information used that information to submit an online request for an insurance quote on Travelers' website and, through

---

[1] Travelers summarizes the Amended Complaint's allegations for purposes of this Motion to Dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Travelers does not concede (and in fact disputes) the veracity of the Amended Complaint's allegations and reserves the right to contest them if this case proceeds.

[2] The Court may consider the Notice Letter in resolving Travelers' Motion because, in ruling on a motion to dismiss, courts may consider "documents possessed by or known to the plaintiff and upon which [she] relied in bringing the suit."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citations omitted).  Here, Plaintiff references, quotes from, and relies on the Notice Letter in the Amended Complaint.  *See, e.g.*, Am. Compl. ¶ 84.

that process, "extract[ed] more detailed" information about Plaintiff, such as her driver's license number.  Am. Compl. ¶ 49.

Plaintiff asserts claims for violation of the DPPA, negligence, negligence per se, violation of Section 349, and declaratory and injunctive relief.  Although Plaintiff appears to allege multiple fraudulent schemes, Plaintiff does not allege that she has personally incurred any actual losses as a result.  Instead, Plaintiff alleges only an increased risk that she may suffer harm at some unknown point in the future, that she has spent time mitigating this alleged risk, and that the value of her personal information has diminished.  *See* Am. Compl. ¶¶ 17, 23, 65, 85, 142, 147, 173.  As set forth below, the Amended Complaint should be dismissed in its entirety and with prejudice.

### III.    LEGAL STANDARD

Travelers moves to dismiss the Amended Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff bears the burden of establishing subject matter jurisdiction, including by pleading facts sufficient to establish Article III standing.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  To meet this burden at the pleading stage, Plaintiff must allege facts making it plausible that she suffered an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)); *see Lujan*, 504 U.S. at 561 (explaining that "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation").

Plaintiff also bears the burden of alleging facts stating a plausible claim for relief.  A motion to dismiss under Rule 12(b)(6) should be granted where a plaintiff fails to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (cleaned up).  This burden requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Although the Court should generally take the Amended Complaint's factual allegations as true in reviewing Travelers' Motion, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (citation omitted).

Plaintiff does not come close to carrying her burden under either Rule 12(b)(1) or 12(b)(6).  The Court should therefore dismiss the Amended Complaint in its entirety with prejudice.

## IV.  ARGUMENT AND CITATIONS TO AUTHORITY

### A.  Plaintiff Lacks Article III Standing.

Article III standing is a "threshold question in every federal case, determining the power of the court to entertain the suit."  *Warth*, 422 U.S. at 498.  The "'irreducible constitutional minimum' of standing" is injury in fact, traceability, and redressability.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560).  As set forth below, the Court should dismiss the Amended Complaint because Plaintiff does not meet her burden of plausibly alleging the injury in fact required to establish Article III standing.

In her Amended Complaint, Plaintiff does not allege that she experienced any fraudulent charges or other actual losses as a result of the Cyber Incident.  Instead, Plaintiff alleges: (1) risk

of future harm and corresponding mitigation efforts; (2) disclosure of her personal information; and (3) diminished value of her personal information.[3]   None rises to the level of an injury in fact.

### 1.   Plaintiff's Alleged Risk of Future Identity Theft and Mitigation Efforts Are Not Injury In Fact for Article III Standing.

Plaintiff alleges that she is "at imminent risk and will continue to be at imminent risk of identity theft."  Am. Compl. ¶ 11.   However, the Supreme Court held in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (U.S. 2021), that the "risk of future harm on its own does not support Article III standing for [a] damages claim."  *Id.* at 2213; *see also Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021).[4]   Thus, as a matter of law, Plaintiff cannot pursue damages based on any alleged risk of future harm – no matter how imminent.

Even beyond the damages context, Plaintiff's allegations of risk of future harm fall far short of what is required for Article III standing purposes.   *See* Am. Compl. ¶¶ 28, 244.   A "threatened injury must be *certainly impending* to constitute injury in fact" and "'[a]llegations of *possible* future injury' are not sufficient."   *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).   Plaintiff peppers the Amended Complaint with buzzwords like "imminent," "substantial," and "certainly impending," *see* Am. Compl. ¶¶ 11, 65, 141, 155, but these are legal conclusions, not facts, and do not establish standing.   *Iqbal*, 556 U.S. at 678

---

[3] To establish standing, Plaintiff seemingly relies on allegations of unspecified injuries and risk of future harm purportedly suffered by unnamed class members. *See, e.g.*, Am. Compl. ¶¶ 11, 17, 23-24, 65, 141-142.   Such allegations cannot support Plaintiff's standing and should be disregarded.   It is well-established law that, in the class action context, Plaintiff "must allege and show that [she] *personally* ha[s] been injured."   *Warth*, 422 U.S. at 503 (emphasis added).   If Plaintiff cannot meet her burden, she cannot "seek relief on behalf of h[erself] or any other member of the class."   *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

[4] Should Plaintiff argue that *McMorris v. Carlos Lopez & Associates., LLC*, 995 F.3d 295 (2d Cir. 2021), governs, *McMorris* is no longer good law after *TransUnion*.   But even applying the *McMorris* three-factor test, Plaintiff cannot establish Article III standing because the factors weigh against a finding of standing.

(citation omitted).  In fact, "numerous circuit and district courts have declined to grant standing based on an imminent risk of future identity theft where plaintiffs," like Plaintiff here, "were unable to show that either their data, or the data of other victims of a data breach or cyber-attack, was actually misused."  *In re Practicefirst Data Breach Litig.*, No. 1:21-CV-00790(JLS/MJR), 2022 U.S. Dist. LEXIS 19272, at *20-21 (W.D.N.Y. Feb. 1, 2022) (citing cases).

To bolster her claim of potential future harm, Plaintiff riddles the Amended Complaint with allegations about the types of crimes that *may* be committed with a driver's license number, *e.g.*, Am. Compl. ¶¶ 20-22, 25, 50, the *potential* risk of identity theft, *e.g.*, *id.* ¶¶ 59-61, and the impact of data security incidents on individuals and society generally, *e.g.*, *id.* ¶¶ 62-64, 130.  But courts routinely hold that generic allegations of an increased risk of future harm just like these "do not raise plaintiffs' claim that they are at imminent risk of future harm above a speculative level." *In re Practicefirst*, 2022 U.S. Dist. LEXIS 19272, at *16-17; *see also Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (rejecting standing based on statistics about rate of identity theft among individuals impacted by data security incidents); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 26 (D.D.C. 2014) (same). The lack of an imminent risk of harm to Plaintiff is underscored by her actual experience. Plaintiff's data was first potentially accessed in April 2021; yet, when she filed the Amended Complaint almost a year later, she still had not experienced any actual fraud or harm.  *See Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 366-67 (M.D. Pa. 2015) (finding alleged increased risk of identity theft did not constitute "imminent injury" as lack of misuse nearly one year after data breach "undercuts the imminency argument"); *Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017) ("[A]s the breaches fade further into the past, the Plaintiffs' threatened injuries become more and more speculative.") (internal quotations omitted).  On top of this, Plaintiff does not allege that

she enrolled in the identity theft and credit monitoring services Travelers offered or in any other such services, further undercutting the plausibility of her allegation that she faces an "imminent risk" of identity theft.  *See* Am. Compl. ¶¶ 57-58 (describing Travelers' offer of free monitoring services but not alleging Plaintiff enrolled or tried to enroll in these services); *id.* ¶ 24 (alleging Plaintiff "*may* incur out of pocket costs for, *e.g.*, purchasing credit monitoring services").

Plaintiff relies on a June 2007 report by the U.S. Government Accountability Office as establishing a risk of future identity theft, but that report falls far short of establishing a certainly impending risk of identity theft.  *See* Am. Compl. ¶¶ 59-61; U.S. Gov. Accountability Office, https://www.gao.gov/assets/gao-07-737.pdf (hereinafter, the "GAO Report").  The very first page of this report concludes that "most breaches *have not resulted* in detected incidents of identity theft[.]"  *Id.* (emphasis added).  The GAO Report also undermines Plaintiff's claim that the disclosure of a driver's license number is likely to lead to identity theft, Am. Compl. ¶ 20, by explaining that "data breaches that result in harm have usually involved fraud on existing accounts (such as credit card fraud)" because "using illicit credit and debit card numbers and bank account information is much easier and less labor intensive than using personally identifiable information to fraudulently open new accounts."  GAO Report at 22.  Thus, Plaintiff's own allegations demonstrate, at most, Plaintiff faces only an "increased" risk of future harm.  As the Supreme Court has repeatedly emphasized, "a *possible* future injury" – even one with an "objectively reasonable likelihood" of occurring – is insufficient to confer standing.  *Clapper*, 568 U.S. at 409-10 (citations omitted).

Finally, Plaintiff alleges that she has been "required to spend her valuable time and resources" to mitigate the risk of future harm.  Am. Compl. ¶ 39; *see id.* ¶¶ 146-148.  But Plaintiff cannot use these mitigation measures to "manufacture" standing when there is no actual or

imminent misuse of her information.  *Clapper*, 586 U.S. at 416 ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."); *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021) (explaining that mitigation efforts do not create injury in fact for Article III standing where there is no imminent or substantial risk of harm); *In re Practicefirst*, 2022 U.S. Dist. LEXIS 19272, at *23 (same).

## 2.   Plaintiff's DPPA Claim Does Not Establish Injury In Fact.

Plaintiff also misses the mark in arguing that the alleged disclosure of her information in violation of the DPPA is an injury in fact sufficient to confer standing.  Am. Compl. ¶¶ 125, 142. In *TransUnion*, the Supreme Court held that a violation of a federal statute may result in an injury in fact but only if the alleged violation caused a harm that "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts – such as physical harm, monetary harm, or various intangible harms including . . . reputational harm."  141 S. Ct. at 2200 (citation omitted).

Plaintiff seemingly attempts to travel under this theory by alleging that the "common law alone will sometimes protect a person's right to prevent the dissemination of private information." Am. Compl. ¶ 125.  But Plaintiff does not identify any specific common law claim.  *Id.*[5]  Without

---

[5] To the extent Plaintiff is referring to the tort of public disclosure of private facts, Plaintiff's alleged harm – disclosure of her driver's license information – does not bear a "close relationship" to the harm actionable under this tort.  This tort provides legal redress for a defendant's (1) intentional (2) publicizing of information about the plaintiff that (3) would be "highly offensive to a reasonable person" and (4) "is not of legitimate concern to the public."  Restatement (Second) of Torts § 652D; *see In re Practicefirst*, 2022 U.S. Dist. LEXIS 19272, at *25-26.  Plaintiff's DPPA claim against Travelers bears no resemblance to this common law claim because (1) Travelers did not intentionally disclose or publicize Plaintiff's information, *see infra* Section IV(B)(1); (2) Plaintiff does not allege her driver's license number was "made public, by communicating it to the public at large," Restatement (Second) of Torts § 652D, cmt. a; and (3) Plaintiff's driver's license number is not the type of private information whose publication would be "highly offensive to a reasonable person," *see id.* cmt. b, c; Am. Compl. ¶ 110 (driver's license

a demonstration of a "close relationship" to a specific common law claim, Plaintiff's allegation of an unauthorized disclosure of her driver's license number is simply a "bare procedural violation[], divorced from any concrete harm," which the Supreme Court has repeatedly deemed insufficient to satisfy Article III's injury-in-fact requirement. *TransUnion*, 141 S. Ct. at 2213 (quoting *Spokeo*, 578 U.S. at 341).

### 3. Plaintiff's Alleged Diminished Value of Her Driver's License Number Is Not Injury In Fact.

Last, Plaintiff alleges that the Cyber Incident resulted in a diminution in value of her driver's license number. Am. Compl. ¶¶ 155, 173. But although Plaintiff spends much time expounding on the alleged value of her driver's license number to cybercriminals and identity thieves, *see id.* ¶¶ 106-109, she does not allege "any details as to how [her] specific, personal information has been devalued because of the breach," *In re Practicefirst*, 2022 U.S. Dist. LEXIS 19272, at *24 (collecting authority rejecting standing based on alleged diminution of value without such details). Without these allegations, Plaintiff fails to establish injury in fact. *See Chambliss v. CareFirst, Inc.*, 189 F. Supp. 3d 564, 572 (D. Md. 2016) (alleged diminished value of personal information was not an injury in fact because plaintiffs did not allege that they attempted to sell their personal information "or that, if they have, the data breach forced them to accept a decreased price for that information"); *Provost v. Aptos, Inc.*, No. 1:17-cv-02120, 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) (same).

For all of the reasons above, the Court should dismiss the Amended Complaint in its entirety under Rule 12(b)(1).

---

numbers routinely disclosed to wide variety of public and private entities); *Condon v. Reno*, 155 F.3d 453, 465 (4th Cir. 1998) (driver's license contains "information routinely shared with strangers" because it "is often needed to cash a check, use a credit card, board an airplane, or purchase alcohol"), *rev'd on other grounds*, 528 U.S. 141 (2000).

**B.**     **Plaintiff Does Not State a Claim Upon Which Relief Can Be Granted.**

**1.**     **Plaintiff's DPPA Claim Fails.**

The DPPA is a federal statute that regulates the disclosure and use of personal information contained in the records of state motor vehicle departments ("DMVs").  *See* 18 U.S.C. §§ 2721 *et seq.*  The DPPA creates civil liability for, among other things, impermissible disclosures of personal information contained in DMV records.  18 U.S.C. § 2724.  The DPPA is not a strict liability statute – it has an express *mens rea* element.  *See Gordon v. Softech Int'l, Inc.*, 726 F.3d 42, 50 (2d Cir. 2013) (explaining that "a strict liability standard is inconsistent with the DPPA as a whole and would frustrate its legislative aims").  Indeed, the DPPA is codified in Title 18 of the United States Code (*i.e.*, the criminal code), and "the provision describing a criminal offense under the DPPA mirrors the language describing a civil cause of action."  *Id.*  Civil liability arises only where a defendant "*knowingly* obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under [the DPPA]."  18 U.S.C. § 2724(a) (emphasis added).

The Second Circuit has explained that there are two potential formulations of the DPPA's "knowingly" element: (1) "any act committed intentionally," or (2) an intentional act committed with actual knowledge the personal information is being used for an improper purpose.  *Gordon*, 726 F.3d at 55 (citations omitted).  This means that, at a minimum, in order for liability to arise under the DPPA, a defendant must have acted intentionally – not in some general sense of the word – but *in the disclosure* of the personal information.  *See, e.g.*, *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 670 (E.D. Pa. 2015) ("A 'knowing disclosure' of [personal driver's information] requires the defendant to take some 'voluntary action' to disclose the information.") (citing *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 603 (7th Cir. 2012)).

Here, Plaintiff's DPPA claim should be dismissed because she does not plausibly allege that Travelers knowingly or intentionally disclosed her personal information.  Plaintiff filed this lawsuit after Travelers notified her that a criminal broke into Travelers' agency portal and then potentially accessed Plaintiff's information.  Put differently, the disclosure Plaintiff challenges is actually a theft, and Travelers was the victim, not the criminal.  As Travelers explained to Plaintiff in its Notice Letter:

> On November 12, 2021, Travelers discovered suspicious activity relating to our agency portal, which is used by our agents to obtain quotes for customers and prospective customers.  We immediately launched an investigation and determined that between April 2021 and November 17, 2021, *an unauthorized party used the credentials of a limited number of agents to access the portal to obtain information sourced from a third party*.

Borchert Decl., Ex. A (emphasis added).  Suffering a theft is far different than making an intentional disclosure.  And for this reason alone, Plaintiff's DPPA claim fails.

Perhaps recognizing this fatal flaw, in the Amended Complaint Plaintiff attempts to save her DPPA claim from dismissal by alleging that she was the victim of a different fraudulent scheme.  Plaintiff expands her initial allegations to allege that an unauthorized party, already in possession of her personal information (by theft or otherwise, but not from Travelers), submitted "fraudulent requests for insurance quotes to *extract* more detailed" information from Travelers' systems, such as Plaintiff's driver's license number.  Am. Compl. ¶ 49 (emphasis added).  But these allegations still do not state a viable claim for relief under the DPPA.  At most, they allege that Travelers was the victim of a fraudulent "extraction process" whereby information was stolen from Travelers, not that Travelers intentionally disclosed Plaintiff's information.

Plaintiff further alleges that Travelers "intentionally configured and designed" its consumer-facing website to allow individuals who submit online requests for insurance quotes to

12

view their drivers' license numbers.  *See, e.g.*, Am. Compl. ¶¶ 13, 44, 94, 186.  But the DPPA does not regulate the configuration and design of websites.  More specifically, the DPPA does not prohibit configuring a website to allow individuals to, after providing certain identifying information, access their own information.  Here, Plaintiff is alleging that Travelers violated the DPPA because third-party criminals – using identifying information that they obtained elsewhere – submitted a fraudulent insurance quote request and accessed Plaintiff's information.  This theft of information from Travelers is very different than the *knowing* disclosure that the DPPA prohibits.  To state a claim, Plaintiff must allege that Travelers intentionally disclosed her information – not merely that it intentionally designed and configured a website that, down the line, fraudsters were able to exploit to access certain information.  Plaintiff's construction would turn the statute on its head by making virtually all fraudulent misuse of a website that results in access to information into a DPPA violation by the *unknowing* victim's website.

Not surprisingly, courts have found that there is "no coherent understanding" of the DPPA's knowing disclosure requirement that would include theft.  *Enslin*, 136 F. Supp. 3d at 671.  Every court to consider DPPA claims in a data breach case has rejected those claims.  For instance, in *Allen v. Vertafore, Inc.*, plaintiffs asserted DPPA claims against an insurance software company, after it reported that certain files containing driver information were accessed without authorization.  No. 4:20-cv-04139, 2021 U.S. Dist. LEXIS 114016, at *2, *9 (S.D. Tex. June 14, 2021), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 138464 (S.D. Tex. July 23, 2021).  Because the claims arose out of an unauthorized access, the district court found that plaintiffs did not plausibly allege that the company had "knowingly disclosed" the information and dismissed the DPPA claims.  *Id.* at *9 (finding the fact that anyone who obtained data did so in an unauthorized manner undercut the notion that defendant "knowingly disclosed the data").  The

Fifth Circuit recently affirmed this dismissal, finding there had been no "disclosure" under the DPPA and noting that "the mere fact that unauthorized users managed to access the information does not imply that [defendant] granted or facilitated that access." *Allen v. Vertafore, Inc.*, No. 21-20404, 2022 U.S. App. LEXIS 6482, at *7 (5th Cir. Mar. 11, 2022). "After all, we would hardly say that personal information was 'disclosed' if it was kept in hard copy and the papers were stolen out of an unlocked, but private, storage facility." *Id.* at *7-8 (citation omitted). The same logic is true here, and the same result should follow.

Similarly, in *Enslin*, plaintiffs brought DPPA claims based on the theft of numerous laptops from Coke, which allegedly contained plaintiffs' personal information. 136 F. Supp. 3d at 658. The court dismissed plaintiffs' DPPA claims because they did not allege plausible facts that Coke took any voluntary action constituting a knowing disclosure. A knowing disclosure of personal information "requires the defendant to take some 'voluntary action' to disclose the information[,]" and the "theft of [personal information] cannot be characterized as a 'voluntary action' taken by the [defendants] to disclose that information." *Id.* at 670-71 (citations omitted); *see also Gulsvig v. Mille Lacs County*, No. 13-1309, 2014 U.S. Dist. LEXIS 43951, at *19 (D. Minn. Mar. 31, 2014) (granting motion to dismiss DPPA claim where plaintiffs failed to plausibly allege defendants engaged in knowing disclosure for impermissible purpose); *Kiminski v. Hunt*, No. 13-185, 2013 U.S. Dist. LEXIS 157829, at *12 (D. Minn. Sept. 20, 2013) (dismissing DPPA claim where complaint alleged no plausible facts that defendants "knowingly" provided database access for impermissible purposes). Even beyond the DPPA context, courts have rejected similar attempts to cast data breaches as "intentional disclosure(s)" by the breached defendant. *See Foster v. Health Recovery Servs.*, 493 F. Supp. 3d 622, 636 (S.D. Ohio 2020) (finding defendant did not commit an intentional or unintentional disclosure where third party allegedly accessed plaintiff's information

14

without defendant's authorization); *In re Brinker Data Incident Litig.*, No. 3:18-cv-686, 2020 U.S. Dist. LEXIS 247918, at *63 (M.D. Fla. Jan. 27, 2020) (finding no disclosure where defendant "did not do any act that made Plaintiffs' information known – the information was stolen by third-parties").

Just like in *Allen*, *Enslin*, and the many other cases dismissing DPPA actions for failure to state a claim, Plaintiff does not and cannot plausibly allege a required element of the claim: that Travelers *knowingly disclosed* her information. Despite the fact that drivers' license numbers have been impacted in numerous incidents, DPPA claims in data breach cases are extremely rare. The DPPA is simply not meant to cover cyberattacks, and no court has found a plaintiff stated a viable DPPA claim under circumstances like those alleged here. As no coherent understanding of a knowing disclosure by Travelers would include theft from Travelers, *see Enslin*, 136 F. Supp. 3d at 671, Plaintiff fails to allege a required element of the DPPA claim, and the Court should dismiss it with prejudice.

## 2. Plaintiff's Negligence Claim Should Be Dismissed.

### a. *Travelers Does Not Owe Plaintiff a Common Law Duty to Safeguard Her Information From a Criminal Cyberattack.*

"The existence of a duty is an essential element of a negligence claim because, '[i]n the absence of a duty, as a matter of law, no liability can ensue.'" *Pasternack v. Lab. Corp. of Am.*, 892 F. Supp. 2d 540, 552 (S.D.N.Y. 2012) (citations omitted). "A plaintiff must show more than a duty owed to a potentially limitless class of people, but rather a specific duty owed to the plaintiff." *Id.* (citation omitted). Courts applying New York law *only* recognize such a duty to safeguard personal information from a criminal theft where a special relationship exists between the plaintiff and the defendant. *See, e.g., Sackin v. Transperfect Glob., Inc.*, 278 F. Supp. 3d 739, 748 (S.D.N.Y. 2017) (employer-employee); *Abdale v. N. Shore-Long Is. Jewish Health Sys., Inc.*,

19 N.Y.S.3d 850, 861 (N.Y. Sup. Ct. 2015) (provider-patient).  This is consistent with New York's general rule that "there is no 'duty to control the conduct of third persons to prevent them from causing injury to others'" absent a special relationship.  *See Lanfranchi v. Grille*, 98 N.Y.S.3d 470, 470 (N.Y. App. Div. 2019) (citations omitted); *see also Fazi v. United States*, 935 F.2d 535, 540 (2d Cir. 1991) ("Absent a special relationship, such as landlord-tenant, carrier-passenger, innkeeper-guest, or employer-employee, a person or entity generally has no duty to protect another from the actions of a third person.") (citations omitted).

Here, there is no relationship whatsoever between Plaintiff and Travelers – let alone a special relationship recognized under New York law – that would give rise to a common law duty to safeguard Plaintiff's personal information from a criminal attack by third parties.  *See Pulka v. Edelman*, 40 N.Y.2d 781, 785 (N.Y. 1976) ("In holding that there is no duty here, it must be stressed that not all relationships give rise to a duty."); *see also Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 U.S. Dist. LEXIS 71996, at *33-34 (S.D.N.Y. June 25, 2010) (holding defendant did not owe a duty to safeguard plaintiffs' information where plaintiffs had no relationship with defendant, but had given information to defendant's institutional clients who then forwarded it to defendant).  As such, this Court should decline Plaintiff's attempt to manufacture a new common law duty under New York law (where none exists) and dismiss Plaintiff's negligence claim.

### b.    *Plaintiff Does Not Allege Cognizable Damages.*

Damages are another essential element of a negligence claim under New York law.  *See IGEN, Inc. v. White*, 672 N.Y.S.2d 867, 869 (N.Y. App. Div. 1998) ("[A]ctual damages are an essential element of a negligence action.").  Because Plaintiff fails to allege any cognizable damages, Plaintiff's negligence claim should be dismissed for this additional reason.

- ***Plaintiff does not allege actual losses or other out-of-pocket expenditures***. Nowhere in the Amended Complaint does Plaintiff plausibly allege that she has actually incurred any actual losses or out-of-pocket expenses. Plaintiff does not allege that she personally incurred any unreimbursed fraudulent charges or that she personally purchased credit monitoring services. Instead, Plaintiff offers up only conclusory assertions and a laundry list of general categories of supposed injuries "suffered" by "Plaintiff *and Class members.*" *See* Am. Compl. ¶¶ 17, 26, 65, 85, 173. But once again, Plaintiff does not provide any *factual* allegations that she personally incurred any of these supposed harms. Whether Plaintiff has incurred actual losses or out-of-pocket expenses is squarely within her personal knowledge, and her failure to allege these damages requires dismissal of her negligence claim. *See Iqbal*, 556 U.S. at 678 (explaining a court need not accept "naked assertions devoid of further factual enhancement" at the motion to dismiss stage).

- ***Plaintiff's alleged risk of future harm is not cognizable as damages***. The crux of Plaintiff's alleged injury is that she faces a *risk of future harm*. *See* Am. Compl. ¶¶ 17, 23, 65, 85, 142, 147, 173. But a risk of future harm does not constitute cognizable damages and therefore does not sustain a claim for negligence under New York law. *See Wallace v. Health Quest Sys.*, No. 20 CV 545, 2021 U.S. Dist. LEXIS 54557, at *19 (S.D.N.Y. Mar. 23, 2021) (noting that "[u]nder New York law, a 'threat of harm is insufficient to impose liability against a defendant in a tort context'" and dismissing negligence claims by plaintiffs that did not allege monetary losses) (quoting *Caronia v. Philip Morris USA, Inc*., 22 N.Y.3d 439, 446 (N.Y. 2013)); *see also Hammond*, 2010 U.S. Dist. LEXIS 71996, at *34-35.

- ***Mitigation efforts are not cognizable as damages.***  Plaintiff also alleges that she has spent time and effort to mitigate the alleged risk of future harm, but this Court has found that "allegations that plaintiffs spent time mitigating or remedying attempted fraud, or monitoring their credit, do not plead cognizable damages."  *Wallace*, 2021 U.S. Dist. LEXIS 54557, at *19; *cf. Fero v. Excellus Health Plan, Inc*., 236 F. Supp. 3d 735, 754 (W.D.N.Y. 2017) ("[M]itigation efforts . . .  do not confer standing where the alleged harm is not imminent.").

- ***Alleged diminished value of personal information is not a cognizable harm.***  Plaintiff alleges half-heartedly that the value of her information has diminished.  *See* Am. Compl. ¶¶ 155, 173.  Yet she does not allege any facts explaining how her personal information has decreased in value.  Plaintiff does not allege, for instance, that she tried to sell her information but was unable to do so because of the Cyber Incident – or even that she could or would sell her information in the first place.  Courts routinely hold that the absence of these allegations is fatal to this theory of injury.  *See Wallace*, 2021 U.S. Dist. LEXIS 54557, at *20-21; *see also* Section IV(A)(3), *supra*; *Fero*, 236 F. Supp. 3d at 755.

As a result of Plaintiff's failure to allege cognizable damages, her negligence claim should be dismissed.  *See, e.g.*, *Shafran v. Harley-Davidson*, No. 07 Civ. 01365, 2008 U.S. Dist. LEXIS 22494, at *5-9 (S.D.N.Y. Mar. 24, 2008) (dismissing negligence and other claims where plaintiff failed to plausibly allege cognizable damages).

### 3.  Plaintiff's Negligence Per Se Claims Fail for Multiple Reasons.

Plaintiff asserts claims for negligence per se based on alleged violations of Section 5 of the FTC Act, the NY Shield Act, and the DPPA.  Am. Compl. ¶¶ 176-208.  These claims fail for multiple reasons.

- *First*, under New York law, "[t]he issue of whether a plaintiff can assert a cause of action based on negligence per se is closely related to the question of whether a private cause of action exists under a statute." *Cohen v. Northeast Radiology, P.C.*, No. 20 CV 1202 (VB), 2021 U.S. Dist. LEXIS 16497, at *18-19 (S.D.N.Y. Jan. 28, 2021) (citation omitted). Neither Section 5 of the FTC Act nor the NY Shield Act have a private right of action, and as a result, state and federal courts applying New York law consistently reject negligence per se claims based on alleged violations of these statutes. *See In re GE/CBPS Data Breach Litig.*, No. 20-CV-2903 (KPF), 2021 U.S. Dist. LEXIS 146020, at *26-28 (S.D.N.Y. Aug. 4, 2021) (dismissing negligence per se claim based on an alleged violation of Section 5 of FTC Act); *Cohen*, 2021 U.S. Dist. LEXIS 16497, at *18-19 (same); *Smahaj v. Retrieval-Masters Creditors Bur., Inc.*, 131 N.Y.S.3d 817, 827 (N.Y. Sup. Ct. 2020) (dismissing negligence per se claim based on an alleged violation of the NY Shield Act); *Abdale*, 19 N.Y.S.3d at 858 (same). This Court should do the same.

- *Second,* because Plaintiff fails to state a viable DPPA claim, *see* Section IV(B)(1), *supra*, Plaintiff's negligence per se claim based on an alleged violation of that statute fails as well. *See Prignoli v. Bruczynski*, No. 20-CV-907 (MKB), 2021 U.S. Dist. LEXIS 186052, at *30 (E.D.N.Y. Sept. 28, 2021) (dismissing negligence per se claim where plaintiff failed to plausibly allege that defendants violated the statutes and regulations at issue).

- *Third,* cognizable damages are an element of a negligence per se claim. As a result, Plaintiff's failure to allege cognizable damages dooms not only Plaintiff's negligence claim but her negligence per se claims as well. *See* Section IV(B)(2)(b), *supra*; *see also, e.g.*, *Willey v. J.P. Morgan Chase, N.A.*, No. 09-CV-1397 (CM), 2009 U.S. Dist. LEXIS 57826, at *24-25 (S.D.N.Y. July 7, 2009) (damages are an element of a negligence per se claim).

19

### 4.      Plaintiff Fails to State a Claim Under N.Y. Gen. Bus. Law Section 349.

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"  *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 557 (S.D.N.Y. 2014).  To establish a prima facie case under Section 349, a plaintiff must plausibly allege that (1) the defendants' deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result of the alleged acts at issue.  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995).  The "causation element is essential:  The plaintiff must show that the defendant's material deceptive act caused the injury."  *Miller*, 994 F. Supp. 2d at 557 (citation omitted).  "Though a plaintiff need not plead reliance . . . a consumer must still allege that he was aware of the deceptive conduct and was 'personally misled' to satisfy the causation requirement."  *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, 2021 U.S. Dist. LEXIS 240360, at *101-02 (D.N.J. Dec. 16, 2021) (citation omitted).

Here, Plaintiff asserts a number of alleged misrepresentations and omissions, but Plaintiff does not come close to plausibly alleging that she was injured *as a result of* those supposed deceptive practices.  Plaintiff does not allege that she was a Travelers' insured or even that she has ever visited Travelers' website, much less that she has reviewed Travelers' privacy policies and related statements.  In fact, Plaintiff does not allege any interactions with Travelers whatsoever. Without any interactions, Plaintiff could not have seen Travelers' privacy policies or otherwise been exposed to any alleged misrepresentation or omission.  Plaintiff's Section 349 claim should be dismissed for failure to plausibly allege causation – or that she suffered injury *as a result of* the alleged deceptive practices.  *See In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, 2021 U.S. Dist. LEXIS 240360, at *102 (dismissing plaintiffs' Section 349 claims for lack of causation where plaintiffs failed to allege "that they were exposed to any misrepresentations or

that they would have been aware of any alleged omissions, had they been disclosed") (citation omitted); *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 902-03 (E.D.N.Y. 2018) (dismissing Section 349 claim where no allegations plaintiff had ever seen the alleged statements because "[t]o assert a GBL § 349 claim, a plaintiff must allege that s/he was *exposed* to the alleged misrepresentations.") (citation omitted); *Gale v. IBM*, 781 N.Y.S.2d 45, 47 (N.Y. App. Div. 2004) ("If the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury.").

In addition to alleging misrepresentations and omissions, Plaintiff alleges that Travelers violated Section 349 by "[f]ailing to develop, implement, and maintain reasonable safeguards to protect the security . . . of Plaintiff and Class members' PII[.]" Am. Compl. ¶ 233(d). But only misrepresentations and omissions are actionable under Section 349, and multiple courts have held that virtually identical allegations do not constitute a "deceptive act" under Section 349. *See Abdale*, 19 N.Y.S.3d at 859-60 (holding defendants' alleged failure to safeguard plaintiffs' information from theft "did not mislead the plaintiff in any material way and does not constitute a deceptive practice within the meaning of the statute"); *Smahaj*, 131 N.Y.S.3d at 827-28 (holding an "alleged failure to safeguard information on [a company's] networks did not mislead plaintiff in any material way and does not constitute a deceptive practice within the meaning of [Section 349]"). The same result should follow here.

Finally, a prima facie showing of a Section 349 claim requires allegations that the alleged deceptive conduct caused actual injury. *See Ovitz v. Bloomberg L.P.*, 18 N.Y.3d 753, 759 (N.Y. 2012). As set forth above in Sections IV(A) and (B)(2)(b), the Amended Complaint lacks any plausible factual allegations of cognizable injury or harm. *See Shafran*, 2008 U.S. Dist. LEXIS 22494, at *7-9 (dismissing Section 349 claim where plaintiff failed to demonstrate "actual

resulting injury" and thereby failed to satisfy the claim's damages element).  For this additional reason, Plaintiff's Section 349 claim must be dismissed.

     **5.**    **Plaintiff's Claim for Declaratory and Injunctive Relief Should Be Dismissed.**

Plaintiff asserts a separate claim in Count V for declaratory and injunctive relief.  Count V should be dismissed because declaratory and injunctive relief are remedies, not independent causes of action.  *See KM Enterprises, Inc. v. McDonald*, No. 11-cv-5098, 2012 U.S. Dist. LEXIS 138599, at *55-56, *58 (E.D.N.Y. Sept. 25, 2012) ("[T]he [Declaratory Judgment Act] provides a remedy, not a cause of action.") (citation omitted).  A request for injunctive relief is also not a separate cause of action.  *See Estevez v. Consol. Bus Transit, Inc*., No. 15-CV-7364 (RA), 2016 U.S. Dist. LEXIS 79766, at *24 (S.D.N.Y. June 20, 2016) ("[I]njunctions are remedies, not causes of action.") (citations omitted).  As neither form of relief is a cause of action, Plaintiff fails to state a claim, and Count V is subject to dismissal.

**V.**        **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should grant this Motion and dismiss Plaintiff's Amended Complaint with prejudice.

*[signature on following page]*

22

Dated: April 7, 2022                    Respectfully submitted,

*/s/ Christopher J. Borchert*
Christopher J. Borchert
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9548
Facsimile: (212) 210-9444
E-mail: christopher.borchert@alston.com

Kristine McAlister Brown (*pro hac vice*)
Donald M. Houser (*pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
E-mail: kristy.brown@alston.com
          donald.houser@alston.com

*Counsel for Defendant The Travelers Indemnity Company*