## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## WHITE PLAINS DIVISION

| | |
|---|---|
| JENNIFER RAND, individually and on behalf of a class similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>THE TRAVELERS INDEMNITY COMPANY,<br><br>     Defendant. | No. 7:21-cv-10744-VB-VR |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF JENNIFER RAND'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............................ 3

   A.     The Settlement Is Procedurally Fair ................................................................ 4

      1.     Plaintiff Has Adequately Represented the Class ...................................... 5

      2.     Plaintiff's Counsel Have Adequately Represented the Class .................................. 6

      3.     The Proposed Settlement Was Negotiated at Arm's Length ...................................... 7

   B.     The Proposed Settlement Is Substantively Fair ............................................................. 8

      1.     The Costs, Risks, and Delay of the Trial and Appeal Favor the Settlement ........... 10

      2.     The Remaining *Grinnell* Factors Support Final Approval of the Settlement .......... 14

         a.     The Reaction of the Settlement Class to the Settlement ........................................... 14

         b.     The Stage of the Proceedings ................................................................................. 15

         c.     The Ability of Travelers to Withstand Greater Judgment ........................................ 16

         d.     The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation ................................................................................ 16

      3.     The Distribution Plan Provides an Effective Method for Distributing Relief Satisfying Rule 23(e)(2)(C)(ii) ................................................................................ 19

      4.     The Proposed Attorneys' Fees Indicate that the Class will Receive Substantial Relief from the Settlement ..................................................................................... 20

      5.     There Are No Unidentified Agreements That Impact the Adequacy of the Relief for the Settlement Class ....................................................................................... 20

      6.     The Settlement Treats the Settlement Class Equitably and Does Not Provide Any Preferences ....................................................................................................... 21

II.     THE PROPOSED SETTLEMENT CLASS SATISFIES ALL REQUIREMENTS OF RULE 23 AND SHOULD BE FINALLY CERTIFIED ................................................. 22

III.   THE CLASS NOTICE PLAN INFORMED THE CLASS OF THE SETTLEMENT AND SATISFIED DUE PROCESS ......................................................................... 23

CONCLUSION ...................................................................................................................... 25

## TABLE OF AUTHORITIES

*Balestra v. ATBCOIN LLC*,
2022 WL 950953 (S.D.N.Y. Mar. 29, 2022) ................................................................. 12

*Bano v. Union Carbide Corp.*,
273 F.3d 120 (2d Cir. 2001) ........................................................................................... 3

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................... 4

*Belton v. GE Cap. Consumer Lending, Inc.*,
2022 WL 407404 (S.D.N.Y. Feb. 10, 2022) ................................................................. 7

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ......................................................................... 4, 9, 14, 18

*Fontanez v. Skepple*,
563 F. App'x 847 (2d Cir. 2014) ................................................................................. 13

*Fresco v. Auto. Directions Inc.*,
2009 U.S. Dist. LEXIS 125233 (S.D. Fla. Jan. 16, 2009) .......................................... 17

*Fresco v. R.L. Polk & Co.*,
2009 U.S. Dist. LEXIS 154273 (S.D. Fla. Jun. 15, 2009) .......................................... 17

*Fulton-Green v. Accolade, Inc.*,
2019 WL 4677954 (E.D. Pa. Sept. 23, 2019) ......................................................... 10-11

*Garey v. Farrin*,
35 F.4th 917 (4th Cir. 2022) ........................................................................................ 13

*Gaston v. LexisNexis Risk Solutions*,
2021 WL 2077812 (W.D.N.C. May 24, 2021) ............................................................ 17

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023) ...................................................................................... 12

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014); *report and recommendation adopted*
2015 WL 5093503 (E.D.N.Y. July 10, 2015) ............................................................... 6

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .................................................................. 15

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ......................................................................... 18

*In re Carrier IQ, Inc., Consumer Priv. Litig.*,
   2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) *amended in part sub nom*
   2016 WL 6091521 (N.D. Cal. Oct. 19, 2016) .......................................................... 21

*Compare Whitaker v. Appriss, Inc.*,
   2014 U.S. Dist. LEXIS 127213 (N.D. Ind. Sept. 11, 2014) ............................................ 13

*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110 (S.D.N.Y. 2009) .................................................................. 6, 10

*In re Currency Conversion Fee Antitrust Litig.*,
   264 F.R.D. 100 (S.D.N.Y. 2010) ...................................................................... 5

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018) ................................................................. 12

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 439 (S.D.N.Y. 2004) ........................................................... 3, 15, 16, 18

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ......................................................7, 9, 10, 12

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
   2022 WL 2063864 (S.D.N.Y. June 8, 2022) ........................................................... 18

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
   341 F.R.D. 128 (D. Md. 2022) *vac. remand. sub nom In re Marriott Int'l, Inc.*,
   78 F.4th 677 (4th Cir. 2023) ........................................................................ 12

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................... 17

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ...............................................................10, 19, 21

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................................... 8

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1977) ................................................................... 8, 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   827 F.3d 223 (2d Cir. 2016) ......................................................................... 5

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................ *passim*

*In re Planned Parenthood L.A. Data Incident Litig.*,
  2024 Cal. Super. LEXIS 2 (Cal. Super. L.A. Cnty. Jan. 2, 2024) ........................................... 18

*In re Sonic Corp. Customer Data Breach Litig.*,
  2020 WL 6701992 (N.D. Ohio Nov. 13, 2020) ......................................................... 12

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) ...................................................... 11

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
  718 F. Supp. 1099 (S.D.N.Y. 1989) ..................................................... 17

*In re Wawa, Inc. Data Sec. Litig.*,
  2023 WL 6690705 (E.D. Pa. Oct. 12, 2023) ............................................. 10

*Jenkins v. Nat'l Grid USA Serv. Co., Inc.*,
  2022 WL 2301668 (E.D.N.Y. June 24, 2022) ............................................ 20

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................... 14

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................. *passim*

*Moses v. N.Y. Times Co.*,
  79 F.4th 23 (2d Cir. 2023) ............................................................... 7

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ...................................................................... 24

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ............................................................ 16

*Reyes v. Summit Health Mgmt., LLC*,
  2024 U.S. Dist. LEXIS 21061 (S.D.N.Y. Feb. 6, 2024) .................................. 4, 7, 20

*Roberts v. Source for Pub. Data LP*,
  2010 WL 4008347 (W.D. Mo. Oct. 12, 2010) ............................................ 17

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ......................................... 6-7, 10

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*,
  2023 WL 3749996 (S.D.N.Y. June 1, 2023) ............................................. 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................................... 3, 4, 5, 24

*Whitaker v. Appriss, Inc.*,
  2014 U.S. Dist. LEXIS 127213 (N.D. Ind. Sept. 11, 2014) ...................................... 13

**RULES AND STATUES**

18 U.S.C. § 2724 ..................................................................................................... 13

Fed. R. Civ. P. 23 ............................................................................................. *passim*

**OTHER**

Manual For Complex Litigation (Fourth) § 21.631 (2004) ........................................ 21

Pursuant to the order preliminarily approving the class action settlement (the "Settlement") in this Action[1] (ECF No. 159, the "Preliminary Approval Order") and in accordance with Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Jennifer Rand ("Plaintiff") respectfully submits this memorandum of law in support of her motion seeking final approval of the Settlement with Defendant The Travelers Indemnity Company ("Defendant" or "Travelers") as well as final certification of the Settlement Class.[2]

## INTRODUCTION[3]

The Settlement provides significant cash benefits—a $6 million non-reversionary common fund—to Settlement Class Members whose information was potentially exposed as a result of unauthorized third-party access to Travelers' independent agent portal identified on or around November 12, 2021 (the "Data Incident"). As previously explained at preliminary approval, the certainty provided by this cash recovery, balanced against the residual risks in the Action, support approval of the settlement. *See* Memorandum in Support of Prelim. App. at 3-4.[4]

---

[1]     Unless otherwise defined, capitalized terms have the same meaning as in the Stipulation and Agreement of Class Action Settlement ("Settlement Agreement" or "SA"), ECF No. 151-1. Unless otherwise noted, ECF citations are to the docket in this Action and internal citations and quotation marks are omitted.

[2]     Travelers does not oppose the relief sought by this Motion for Final Approval and agrees that the Court should grant final approval. By not opposing this relief, Travelers does not concede the factual basis for any claim and denies liability.

[3]     The Joint Declaration of Thomas J. McKenna and Christian Levis in Support of Plaintiff Jennifer Rand's (1) Motion for Final Approval of Class Action Settlement and (2) Motion for Attorneys' Fees, Expenses, and Service Award ("Final App. Decl."), filed herewith, and the Joint Declaration of Thomas J. McKenna and Christian Levis in Support of Plaintiff Jennifer Rand's Motion for Preliminary Approval of Class Action Settlement (ECF No. 151, "Prelim. App. Decl."), describes in detail the procedural and factual history of this Action.

[4]     Plaintiff incorporates by reference the arguments presented in her Motion for Preliminary Approval of Class Action Settlement. ECF Nos. 149-154.

Since this Court granted preliminary approval of the Settlement, the Settlement Administrator commenced notice to the Settlement Class and Plaintiff is pleased to report that, to date, there are no objections to the Settlement, Class Counsel's request for attorneys' fees and expenses, or the request for a service award, and one Class Member has thus far opted out. The Settlement Class's favorable reaction further demonstrates that the Settlement is in the best interests of the Class. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement, finally certify the Settlement Class, and enter the Final Approval Order and Judgment dismissing the claims against Defendant with prejudice on the merits, in the form of the proposed order filed herewith.

## CLASS NOTICE

Pursuant to the Preliminary Approval Order, the Settlement Administrator, Angeion Group, LLC ("Angeion"), commenced the notice plan as contemplated by the Settlement Agreement. Within fifteen (15) days of entry of the Preliminary Approval Order, following receipt of the Class List from Travelers, Angeion mailed a copy of the Short Form Notice and Settlement Payment Election Form to all Class Members on the Class List via first-class U.S. mail. Declaration of Jazminee Shumway Re: Implementation of Notice Plan ("Angeion Decl.") ¶ 8. Notices that were returned by the USPS as undeliverable with a forwarding address were re-mailed to that forwarding address. *Id*., ¶ 9. Notices that were returned by the USPS without a forwarding address were subjected to an address verification search ("skip trace") by Angeion in an attempt to locate an updated address. *Id.* As a result of the above-described efforts, of the 11,581 Notices returned as undeliverable by the USPS, 666 were re-mailed to updated addresses and 7,591 Short Form Notice and Settlement Payment Election Forms will be remailed by Angeion. *Id.*

On October 21, 2024, Angeion also caused the Settlement Website to go live at www.trvdatasettlement.com which contained (i) the Settlement Agreement (and all its exhibits); (ii) the Long Form Notice; (iii) the toll-free phone number applicable to the Settlement; (iv) the motion for preliminary approval of settlement and the Preliminary Approval Order; (v) the dates and locations of relevant Court proceedings, including the Final Approval Hearing; and (vi) other relevant Court filings pertaining to the Action and resulting Settlement. *Id.*, ¶ 11. As of December 5, 2024, the Settlement Website has received 7,221 website visits by 5,023 unique users totaling 13,990 pageviews. *Id*. That same day, Angeion also established a toll-free phone line for callers to obtain information regarding the Settlement and also request hard copies of the Long Form Notice, Short Form Notice, and Settlement Payment Election Form. *Id.*, ¶ 12. Angeion also established a settlement mailbox for Class Members to submit hard copy Settlement Payment Election Forms and for case correspondence.

To date, following this robust notice, zero objections have been received by Class Counsel, Defendant's Counsel, or filed on this Court's docket. Final App. Decl. ¶ 6. Angeion also reports that it has not received any objections. Angeion Decl. ¶ 15. The Objection Deadline is set for December 20, 2024. Accordingly, pursuant to Paragraph 41 of the Preliminary Approval Order, Class Counsel will file a Reply brief on or before January 17, 2025, to address any objections, or lack thereof.

## ARGUMENT

## I.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Public policy favors the resolution of class actions through settlement. *See, e.g.*, *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 439, 455 (S.D.N.Y. 2004). "[C]ourts encourage early settlement of class actions, when warranted,

because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013). In service of "the strong judicial policy in favor of settlements, particularly in the class action context," *Wal-Mart Stores, Inc.*, 396 F.3d at 116–17, a court may approve a class action settlement upon a showing that the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).

A settlement is fair, reasonable, and adequate and should be approved if the settlement is shown to be both procedurally and substantively fair. *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) ("*In re Payment Card*"). Rule 23 sets out the factors that guide the Court's analysis, with the factors in Rule 23(e)(2)(A) and (B) focusing on the procedural fairness, and those in Rule 23(e)(2)(C) and (D) focusing on substantive fairness. The courts in this Circuit also consider the complementary factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*") to assess the fairness of a class settlement. Applying both the *Grinnell* and Rule 23(e) factors to the Settlement here demonstrates final approval of the Settlement is warranted.

### A.    The Settlement Is Procedurally Fair

To approve a class action settlement, Rule 23 requires the Court to find in part that "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length[.]" FED. R. CIV. P. 23(e)(2)(A)-(B). Where a settlement is the product of "arm's length negotiations" following "extensive pre-negotiation discovery … and then … months of discovery" conducted by "experienced counsel," it "counsels in favor of approving the settlement." *Reyes v. Summit Health Mgmt., LLC*, 2024 U.S. Dist. LEXIS 21061, at \*7-8 (S.D.N.Y. Feb. 6, 2024).

### 1.    Plaintiff Has Adequately Represented the Class

Adequate representation under Rule 23(e)(2)(A) requires that the "interests . . . served by the Settlement [are] compatible with" those of the class members. *Wal-Mart Stores, Inc.*, 396 F.3d at 110; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 232 (2d Cir. 2016) (the focus for adequacy is whether the interests of the proposed settlement class are "sufficiently cohesive to warrant adjudication"). This is satisfied when the class representative's interests are aligned and not antagonistic to those of the class. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111-12 (S.D.N.Y. 2010); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 106-07 ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

These requirements are satisfied here. Plaintiff suffered the same alleged injury as other Class Members. Plaintiff's Personal Information was potentially exposed in the same Data Incident as other Settlement Class Members, subjecting all Settlement Class Members to the same risk of financial fraud and identity theft. Travelers' alleged failure to implement reasonable data security measures impacted not just Plaintiff's privacy interests, but the privacy interests of all Class Members whose information was potentially exposed by the Data Incident. As a result, Plaintiff and the Class seek the same relief from the same injury. *See Wal-Mart Stores*, 396 F.3d at 110-11 (class representatives are adequate if their injuries encompass those of the class they seek to represent). All Settlement Class Members, including Plaintiff, share interests in obtaining a monetary recovery from Defendant.

Moreover, there are no conflicting interests among Plaintiff and the Class that would provide a barrier to Plaintiff's adequate representation of the Class. *See Wal-Mart Stores, Inc.*, 396 F.3d at 110-11 (class representatives are adequate if their injuries encompass those of the class

they seek to represent); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at \*34 (E.D.N.Y. Oct. 15, 2014) ("Even if there was a conflict [relating to the assignment of recovery rights] (and there is not), it would under no conceivable circumstances be so 'fundamental'" to cause class representatives to be inadequate), *report and recommendation adopted*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015). Plaintiff and Class Members both have a strong interest in obtaining the maximum recovery possible for the harm caused by Defendant. Plaintiff's interests are well-exemplified by her continuing and ongoing efforts to prosecute this Action.

### 2.    Plaintiff's Counsel Have Adequately Represented the Class

The second factor in evaluating the Settlement is the adequacy of plaintiff's counsel. *In re Payment Card*, 330 F.R.D. at 30 (considering whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation"); *accord* Fed. R. Civ. P. 23(g). Gainey McKenna & Egleston ("GM&E") has led the prosecution of this Action from its inception. Lowey Dannenberg, P.C. ("Lowey") entered their appearance in this case as co-counsel on February 10, 2023 (ECF Nos. 45-46) and prosecuted the Action alongside GM&E, each dedicating a total of 3,223.94 hours to the successful prosecution of this Action. *See* Final App. Decl. ¶ 11; *see also* Prelim. App. Decl. ¶ 16. Class Counsel have decades of experience leading some of the most complex class actions, including data breach class actions, on behalf of consumers. Prelim. App. Decl. ¶¶ 36, 53-54. Class Counsel's extensive data breach and class action litigation experience provides strong evidence that the Settlement is procedurally fair. ECF Nos. 151-2 – 151-3 (firm résumés). *See also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009), *aff'd sub nom. Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (noting the "extensive" experience of counsel in granting final approval of settlement); *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at \*2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair). The combined

expertise of Class Counsel was important in prosecuting the Action and achieving this fair, reasonable and adequate Settlement.

### 3.    The Proposed Settlement Was Negotiated at Arm's Length

As this Court has recognized, "[p]reviously, settlements negotiated at arm's length enjoyed a presumption of fairness. However, the Second Circuit has since clarified that Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a settlement agreement based on its negotiation at arm's length." *Reyes*, 2024 U.S. Dist. LEXIS 21061, at *7, n.3 (quoting *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023)). Despite this, "Rule 23(e)(2)(b) requires a court to consider whether the proposed settlement was negotiated at arm's length" and "[t]he existence of arm's-length negotiations further counsels in favor of approving the settlement on a preliminary basis." *Id.*, at *7. To further assess the integrity of the process, the key question is whether "plaintiffs' counsel is sufficiently well informed" to adequately advise and recommend the settlement to the class representatives and settlement class. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 (S.D.N.Y. 2019).

As detailed in the declarations filed with Plaintiff's Motion for Preliminary Approval, Motion for Attorneys' Fees, Expenses, and Service Award, and this motion, the Settlement was reached after extensive arm's-length, non-collusive negotiations assisted by respected mediator Antonio Piazza of Mediated Negotiations, during which the Parties exchanged their legal theories, pieces of evidence, and challenged each other's case through the mediator. *See* Prelim. App. Decl., ¶¶ 28-29; *see also Belton v. GE Cap. Consumer Lending, Inc.*, No. 21-cv-9492 (CM), 2022 WL 407404, at *4 (S.D.N.Y. Feb. 10, 2022) (negotiations that "included a mediation session with an experienced and highly regarded mediator … were thorough and hard fought, and free from any undue pressure or collusion").

Class Counsel believes Plaintiff's claims have substantial merit but acknowledge the expense and uncertainty of continued litigation against Travelers (as detailed below), which maintains that it has meritorious defenses. In recommending that the Court approve this Settlement, Class Counsel have accounted for the uncertain outcome and risks of further litigation and therefore believe the Settlement confers significant benefits on Plaintiff and the Class.

The Class benefitted from being represented by Class Counsel, who was well informed about the strengths and weaknesses of the claims and defenses presented, as well as an active Plaintiff whose interests aligned with those of the Class. At all times, Class Counsel had a sufficient basis on which to recommend that Plaintiff enter into the Settlement, which weighs in favor of finding that the Settlement is procedurally fair and should be approved. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ III*") (courts give "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). Thus, given Class Counsel's considerable prior experience in complex class action litigation involving data breach claims (among others), their knowledge of the strengths and weaknesses of Plaintiff's claims asserted in this Action, their assessment of the Settlement Class's likelihood of recovery following trial and appeal, and their experience negotiating with Travelers, there is evidently a strong showing that the compromise reached here is fair and reasonable. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1977), *aff'd* 117 F.3d 721 (2d Cir. 1997) ("*PaineWebber*") (observing that "great weight" is given to the advice of experienced counsel).

### B.    The Proposed Settlement Is Substantively Fair

If granted final approval, this Settlement will provide a significant monetary benefit for the class in the form of a $6,000,000 non-reversionary Settlement Fund. SA ¶¶ 2.38, 3.1. As this was

the only case filed following the Data Incident, this Settlement is the only means of direct recovery for Settlement Class Members.

To assess a settlement's substantive fairness, the Court considers whether, "the relief provided for the class is adequate," accounting for the following factors: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). The Court is also required to confirm that the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D).

Courts in this Circuit consider the nine *Grinnell* factors in deciding whether a settlement is substantively fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. The amended Rule 23(e)(2) factors complement the *Grinnell* factors. *See In re GSE Bonds Antitrust Litigation*, 414 F. Supp. 3d at 692 ("The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these '*Grinnell*' factors."); *accord In re Payment Card*, 330 F.R.D. at 29 ("Indeed, there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C-D) factors . . ."). Here, the factors set forth in Rule 23(e) and *Grinnell* support final approval.

9

1.    **The Costs, Risks, and Delay of the Trial and Appeal Favor the Settlement**

Rule 23(e)(2)(C)(i) "implicates several *Grinnell* factors, including factors 1, 4-6: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card*, 330 F.R.D. at 36; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693. In evaluating this factor, the Court's role is to "balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 694; *see also Shapiro*, 2014 WL 1224666, at *10 (at final approval, the Court's role is not to "decide the merits of the case or resolve unsettled legal questions or to foresee with absolute certainty the outcome of the case" but rather to "assess the risks of litigation against the certainty of recovery under the proposed settlement."). The costs, risks, and delay of trial and appeal are significant in all data breach cases, but particularly in cases involving facts such as those in this Action.

Here, the consideration that the Settlement provides falls well within the range of what the Court may consider reasonable at final approval. *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*"). While Plaintiff is confident in the merits of her claims and believe they would ultimately prevail at trial, the factual and legal issues in this Action are complex and expensive to litigate. *See, e.g., In re Wawa, Inc. Data Sec. Litig.*, 2023 WL 6690705, at *7 (E.D. Pa. Oct. 12, 2023) ("This is a complex class action lawsuit regarding damages from a data breach, an area of law that has not yet been fully developed"); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. at 123 ("the complexity of Plaintiffs' claims ipso facto creates uncertainty"); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) ("The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis

for approving a settlement."); *Fulton-Green v. Accolade, Inc.*, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 23, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) (noting that, because the case "involved a greater risk of non-recovery" due to "still-developing law," this factor weighed in favor of approval).

Specifically, this case involves complex legal and technical issues involving Travelers' ForAgents Portal. Establishing liability would involve obtaining and proving the meaning and significance of evidence, including source code, significant third-party discovery,[5] deposition testimony, and other facts collected in discovery. As is always true in cases involving large document productions, the duration of the case would depend on the time Defendant requires to produce documents, and the time the Parties require to review Defendant and non-party documents. This case has already resulted in the production of more than 25,000 pages that Class Counsel has reviewed and analyzed. Prelim. App. Decl., ECF No. 151, ¶ 22, 24.

Travelers conducted its own discovery, including the deposition of Plaintiff, and used the information it developed to build on its defenses to Plaintiff's claims. Had discovery continued, Travelers would have likely served additional discovery demands and subpoenas, including on third parties, and would have no doubt used the evidence collected through its discovery efforts to argue, among other things, that the Personal Information potentially compromised in the Data Incident did not qualify for protection under the DPPA.

---

[5]    Plaintiff served subpoenas on approximately nine (9) third parties (including LexisNexis, KPMG, F5, Acxiom, Sontiq, Inc. (d/b/a Cyberscout), Mandiant, Inc., and two of Travelers' independent agents) seeking documents and depositions. Continued litigation would have had Plaintiff serve further subpoenas on third parties identified during the course of Plaintiff's investigation.

Had this case continued, the cost of litigation would have been significant for both sides due to the need for technical experts to interpret source code and conduct forensic computer analysis. Indeed, well before the Parties decided to mediate, Plaintiff retained her own expert, which was necessary given the complex subject matter in this Action. If this case had progressed towards class certification[6] and summary judgment, the Parties' experts would have added to the cost and duration of the case and likely would have triggered a "battle of the experts" in this Action.[7] Expert discovery would likely have led to *Daubert* motion practice by both sides, further increasing the cost and risks of the litigation, and delaying any resolution. Given the complexities of this litigation and its focus on technical data security issues that would likely be unfamiliar to the average juror, this Action presents a significant level of risk and uncertainty. Given that the case law is still emerging, there is uncertainty whether Plaintiff would prevail on the merits had the case gone to trial.

---

[6]     The risk of maintaining a class through trial is another important consideration in evaluating the Settlement. Though present in every class action, this risk is significant where defendants are likely to challenge class certification, including by petitioning for an interlocutory appeal under Rule 23(f). *See In re GSE Bonds Antitrust Litig*., 414 F. Supp. 3d 686 at 694 (the risk of maintaining a class through trial "weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated"). Certifying a litigation class may raise complex legal and factual issues given the data breach issues involved. There have only been a handful of data breach actions that have certified a litigation class. *See, e.g., In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 172 (D. Md. 2022), *vac. remand. sub nom. In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023) (certifying Rule 23(b)(3) class); *In re Sonic Corp. Customer Data Breach Litig.*, 2020 WL 6701992, at *3-6 (N.D. Ohio Nov. 13, 2020) (certifying financial institution data breach class); *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 894 (11th Cir. 2023) (affirming, in part, decision to certify nationwide class of consumers in data breach action).

[7]     *See, e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) (experts "tend[] to increase both the cost and duration of litigation"); *Balestra v. ATBCOIN LLC*, 2022 WL 950953, at *3 (S.D.N.Y. Mar. 29, 2022) (granting preliminary approval of class action settlement and finding the settlement amount within the range of approval considering the risks, including a costly and confusing "battle of the experts").

Furthermore, lying ahead for Plaintiff were the challenges in establishing liability under the DPPA, particularly with respect to what constitutes "personal information[] from a motor vehicle record" and whether such information continues to be protected through its travels from a State Department of Motor Vehicles ("DMV"). *See* 18 U.S.C. § 2724(a). While Plaintiff believes that PII originally sourced from the DMV is protected under the DPPA, regardless of the number of entities it then travels through, such issue is far from certain and subject to diverging views across the federal circuits. *Compare Whitaker v. Appriss, Inc.*, 2014 U.S. Dist. LEXIS 127213, at *4 (N.D. Ind. Sept. 11, 2014) (finding personal information sourced from the DMV to be protected "throughout its travels") *with Garey v. Farrin*, 35 F.4th 917, 926-27 (4th Cir. 2022) (protecting "information from a motor vehicle record," not information that "can be linked back to (*i.e.* derived from) such a record."). Even if Plaintiff's interpretation is correct (which would be a costly and lengthy effort to determine), Plaintiff would then have to find the original source of her PII. This would involve extensive discovery efforts which could ultimately reveal that her PII was not sourced from the DMV, thus making her DPPA claim a possible failure under Second Circuit caselaw. *See Fontanez v. Skepple*, 563 F. App'x 847, 849 (2d Cir. 2014).

In the face of these risks, this Settlement of $6,000,000 represents an excellent recovery for the Class and a reasonable hedge against the risks of pursuing the claims against Travelers. Although Plaintiff and Class Counsel firmly believe that the asserted claims are meritorious, and they would zealously prosecute those claims to prevail at trial, Class Counsel's judgment is that there are substantial risks attendant with the continued prosecution of the claims. The existence of those risks fully supported entering into this Settlement now before this Court, and those same risks favor the Settlement's approval.

### 2. The Remaining *Grinnell* Factors Support Final Approval of the Settlement

The *Grinnell* factors not expressly included in Rule 23(e)(2)(c)(i) also favor finally approving the Settlement. These factors include: "(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; . . . (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.

### a. The Reaction of the Settlement Class to the Settlement

"A positive reaction of the class to the proposed settlement favors its approval by the Court." *Meredith Corp.*, 87 F. Supp. 3d at 663. The class's reaction to a proposed settlement is an important factor to be weighed in considering its fairness and adequacy. S*ee Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."). This motion is being filed before the deadline to object or opt out of the Settlement, as required by the schedule.  To date, there has been one request for exclusion and no objection to the Settlement, Fee and Expense Application, or the service award. Given the lack of objections and opt-outs to date, the reaction of the class provides a strong indication of support for the Settlement. To date, 5,675 Settlement Payment Election forms have been submitted to the Settlement Administrator, and more are anticipated to be filed at the deadline. *See* Angeion Decl. ¶ 13. To reiterate, this is not a traditional "claims deadline," since under the Settlement all Class Members are entitled to receive payment, not just those who submit the Settlement Payment Election form, rather it is a deadline to enable Class Members to select *how* they would like to

receive their payment—through several electronic payment options or via paper check. The default method will be by paper check if no form is submitted.

Further, Plaintiff favors the Settlement. Plaintiff has been directly involved in overseeing the litigation, including participating in litigation and settlement strategy, giving her deposition, and reviewing various pleadings and briefs. *See* Final App. Decl. Ex. C ("Rand Decl."), ¶ 9, filed herewith. The Settlement Administrator will submit a declaration updating the Court on the responses (if any) from the Settlement Class following the December 20, 2024 settlement payment election, objection, and opt-out deadlines. To the extent any objections are presented, Class Counsel will file a response addressing the objections.

### b.    The Stage of the Proceedings

Examining the stage of the proceedings at which the Settlement occurs is intended to assess "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02-cv-5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. at 458 ("[T]he question is whether the parties had adequate information about their claims."). This factor does not require extensive formal discovery, or indeed any formal discovery at all, "as long as '[counsel] have engaged in sufficient investigation . . . to enable the Court to 'intelligently make . . . an appraisal' of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10.

In this case, there is no doubt that Plaintiff and Class Counsel had sufficient information with which to determine that the Settlement was fair, reasonable, and adequate. This litigation has been active for nearly three full years, during which time Plaintiff and Class Counsel conducted extensive factual and legal research; engaged in full blown party and third-party discovery;

consulted an expert to assess the merits of their claims; opposed a motion to dismiss; briefed discovery dispute motions; and defended the deposition of Plaintiff, among other work. *See generally* Prelim. App. Decl. ¶¶ 9-35. Moreover, Class Counsel brought to bear the knowledge and experience gained from litigating other similar data breach cases. The information gathered during this process greatly informed Plaintiff of the advantages and disadvantages of entering into the Settlement.

### c.    The Ability of Travelers to Withstand Greater Judgment

While Defendant could withstand a greater judgment, "[a] defendant is not required to 'empty its coffers' before a settlement can be found adequate." *Meredith Corp.*, 87 F. Supp. 3d at 665. That Travelers could have sustained a greater judgment is not determinative of the Settlement's substantive fairness. *See In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. at 460 ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate").

### d.    The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation

The eighth and ninth *Grinnell* factors—the reasonableness of the settlement in light of the best possible recovery and the risks of litigation—also weigh in favor of approving the Settlement. As the Second Circuit has explained, there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

"The adequacy of the amount achieved in settlement is not to be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and

weaknesses of plaintiffs' case.'" *Meredith Corp.*, 87 F. Supp. 3d at 665-66; *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (same).

In the face of these risks, this Settlement of $6,000,000 represents an excellent recovery for the Class and a reasonable hedge against the risks of pursuing the claims against Travelers. *PaineWebber*, 171 F.R.D. at 125 ("'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). The proposed Settlement provides "the immediacy and certainty of a recovery, against the continuing risks of litigation." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010). It exchanges extensive prosecution costs and a lengthy litigation timeline with a real recovery. While the class wide damages could be substantial if Plaintiff successfully proved her DPPA claim and upheld it on appeal (potentially up to $2,500 per class member based on the statutory damages), achieving that level of recovery was always going to be a significant challenge, given the significant risks associated with certifying a litigation class, establishing liability, proving damages, and in light of the developing jurisprudence involving data privacy and DPPA laws, as discussed *supra*.

For this reason, many DPPA cases settle for injunctive relief alone with *no* monetary recovery. *See, e.g.*, *Gaston v. LexisNexis Risk Solutions*, 2021 WL 2077812, at *6 (W.D.N.C. May 24, 2021) (settlement for injunctive relief only reached after court granted plaintiffs' summary judgment motion for declaratory and injunctive relief, but denied claim for liquidated damages under DPPA); *Roberts v. Source for Pub. Data LP*, 2010 WL 4008347 (W.D. Mo. Oct. 12, 2010) (settled for injunctive relief and attorneys' fees only); *Fresco v. Auto. Directions Inc.*, 2009 U.S. Dist. LEXIS 125233 (S.D. Fla. Jan. 16, 2009) (same); *Fresco v. R.L. Polk & Co.*, 2009 U.S. Dist. LEXIS 154273 (S.D. Fla. Jun. 15, 2009) (same).

Even if Plaintiff succeeded at certifying a class, she would still face hurdles in establishing liability and damages at trial. Based on Class Counsel's preliminary damages estimates, if Plaintiff successfully certified a litigation class and prevailed at trial, damages under the DPPA ($2,500 per violation) alone would be more than $222 million. However, many similar data breach cases have either been resolved with no monetary recovery to the Class or a recovery in the range of $6.61 to $30 per class member. *See, e.g., In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 WL 2063864, at *9 (S.D.N.Y. June 8, 2022) (approving settlement with tiered payment structure that included $30 payment and noting that some "data-breach cases have provided lower settlement payments to class members, with relief that includes a payment of $10 or merchant coupons"); *In re Planned Parenthood L.A. Data Incident Litig.*, Case No. 21STCV44106, 2024 Cal. Super. LEXIS 2, at *29 (Cal. Super. L.A. Cnty. Jan. 2, 2024) (finding settlement providing "$6.61 per class member," or "0.70-1.08% of Defendant's maximum exposure" to be "within the ballpark of reasonableness."); *accord Grinnell*, 495 F.2d at 455 ("satisfactory settlement" could be "a thousandth part of a single percent of the potential recovery."); *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) ("[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved").

In contrast, this Settlement will provide Class Members a gross recovery of approximately $67.52. While the monetary compensation Travelers provided under the Settlement is a percentage

of the total maximum amount of damages, its value on a per Class Member basis exceeds typical recoveries for this type of claim.

Class Counsel therefore recommends the Settlement in that it provides immediate compensation to the Class. In light of the risks of continued litigation, Class Counsel's measured judgment is that the total consideration provided by the Settlement is fair, reasonable, and adequate in light of all of the circumstances. The consideration that the Settlement provides is well within the range of consideration found to be "fair, reasonable, and adequate" at final approval. *NASDAQ II*, 176 F.R.D. at 102.

### 3. The Distribution Plan Provides an Effective Method for Distributing Relief Satisfying Rule 23(e)(2)(C)(ii)

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *In re Payment Card*, 330 F.R.D. at 40. In addition, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id*.

The Settlement Fund will be distributed first by subtracting any Court-approved disbursements, including: (i) Taxes, (ii) Administration and Notice Costs; (iii) Attorneys' Fees and Expenses awarded by the Court; and (iv) any Service Award approved by the Court (*i.e.*, the "Net Settlement Fund"). SA ¶¶ 3.2. After that, Settlement Payments will be distributed to Authorized Claimants from the Net Settlement Fund on a *pro rata* basis. *Id.* ¶¶ 7.1, 7.2.[8]

Allocating settlement proceeds on a *pro rata* basis has been approved as a fair, reasonable, and adequate method of allocating settlement funds by this Court and by courts in other class action settlements. *See, e.g.*, *In re Payment Card*, 330 F.R.D. at 47 (on preliminary approval, finding that

---

[8]    The final amount per Authorized Claimant will be determined after the permitted disbursements are paid and the Settlement Administrator has processed Settlement Election Forms or otherwise located Class Members.

a "*pro rata* distribution scheme is sufficiently equitable"); *Jenkins v. Nat'l Grid USA Serv. Co., Inc.*, 2022 WL 2301668, at *3 (E.D.N.Y. June 24, 2022) (approving a *pro rata* distribution of the settlement proceeds after reduction of the Settlement Costs); *Reyes v. Summit Health Mgmt., LLC*, No. 22-cv-9916 (VSB), 2024 WL 472841, at *5 (S.D.N.Y. Feb. 6, 2024) (approving the "*pro rata* distribution scheme" as equitable where the "[d]istribution of funds will thus be automatic, with no need for additional effort on the part of Class members."). The Court should approve the Distribution Plan for use in allocating proceeds from this Settlement.

### 4. The Proposed Attorneys' Fees Indicate that the Class will Receive Substantial Relief from the Settlement

The attorneys' fees and expenses that will be sought in connection with the Settlement are reasonable and further indicate that the Settlement Class will receive a substantial Net Settlement Fund. As more fully described in the accompanying Motion for Award of Attorneys' Fees, Expenses, and Service Award, the percentage of attorneys' fees requested (*i.e.*, thirty-three and one-third percent (33 1/3%)) is reasonable in light of the negotiated Settlement because it reflects market rates and is within the range of attorneys' fee awards made in cases of similar or less complexity in this District. In addition to the request for attorneys' fees, Plaintiff's Counsel seek $79,809.58 in reasonably incurred litigation. *See Meredith Corp.*, 87 F. Supp. 3d at 671 (reasonably incurred expenses may be reimbursed from the settlement fund). The expenses are of the type reasonably incurred in class action litigation.

### 5. There Are No Unidentified Agreements That Impact the Adequacy of the Relief for the Settlement Class

Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Here, the Settlement Agreement specifically identifies the *In Camera* Supplement. SA ¶ 6.2. The *In Camera* Supplement provides Travelers with a qualified right to terminate the Settlement Agreement under certain conditions

before final approval. *Id.* This type of agreement is standard in complex class action settlements and does not impact the fairness of the Settlement.[9] The Court previously approved the *In Camera* Supplement and allowed it to be filed under seal. ECF No. 158.

> **6.      The Settlement Treats the Settlement Class Equitably and Does Not Provide Any Preferences**

The Settlement also "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). The Distribution Plan provides for a *pro rata* distribution of the Net Settlement Fund, a method this Court has already found equitable in other cases. *See In re Payment Card*, 330 F.R.D. at 47 (finding that "pro rata distribution scheme is sufficiently equitable"); *see also Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 15-CV-3538 (VSB), 2023 WL 3749996 at *4 (S.D.N.Y. June 1, 2023) (finding that "the *pro rata* distribution of the Settlement Fund … [is] sufficient to show that the Settlement Class is treated equitably."). The Settlement does not favor or disfavor the Plaintiff or any Settlement Class Member; nor does it discriminate against, create any limitations, or exclude from payments any persons or groups within the Settlement Class. *See NASDAQ II*, 176 F.R.D. at 102. All Settlement Class Members would release Travelers with respect to claims based on the same factual predicate of this Action. SA ¶¶ 12.1, 12.2. The proposed Class Notice provides information on how to opt out of the Settlement; absent opting out, each Class Member will be bound by the release. SA ¶ 14.6.

* * * * *

---

[9]      *See, e.g.*, *In re Carrier IQ, Inc., Consumer Priv. Litig.*, No. 12-md-02330 (EMC), 2016 WL 4474366, at *5, 7 (N.D. Cal. Aug. 25, 2016), *amended in part sub nom. In re Carrier IQ, Inc.*, No. 12-md-02330 (EMC), 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016) (observing that such "deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement); *accord* Manual For Complex Litigation (Fourth) § 21.631 (2004) (explaining that "[k]nowledge of the specific [conditions] that will vitiate a settlement might encourage third parties to solicit class members to [act].").

Based on all of the foregoing factors, including the risks that Plaintiff would face in continuing to litigate, the Court should grant final approval of the Settlement.

## II.    THE PROPOSED SETTLEMENT CLASS SATISFIES ALL REQUIREMENTS OF RULE 23 AND SHOULD BE FINALLY CERTIFIED

For all of the reasons detailed in the Preliminary Approval Motion (ECF Nos. 149-150) and as held in the Court's Preliminary Approval Order (ECF No. 159), the Settlement Class satisfies all requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as the predominance and superiority requirements of Rule 23(b)(3). The preliminarily certified Settlement Class is as follows:

> All individuals of the United States who were sent notice that their Personal Information was accessed, stolen, or compromised as a result of the Data Incident, as reflected on the Class List.[10]

ECF No. 159 at ¶ 4. The Court should finally certify the Settlement Class in connection with this Settlement.

**Numerosity.** There are approximately 88,858 geographically dispersed persons that fall within the Settlement Class definition. *See* Prelim. App. Decl. ¶ 38; *see also* Angeion Decl. ¶¶ 6, 13 (describing after duplication that notice had been mailed to approx. 88,364 class members and detailing the total number of Settlement Claim Election forms filed in the Action to date).

**Commonality.** Commonality is easily satisfied here where there are numerous common questions of law and fact and where Plaintiff and Class Members will have to answer the same liability and impact questions through the same body of common class-wide proof.

---

[10]    Excluded from the Settlement Class are: (i) Travelers, any Person in which Travelers has a controlling interest, and Travelers' officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual that timely and validly opts out of the Settlement.

**Typicality.** Plaintiff's claims are typical of those of the entire Settlement Class because the Plaintiff's and Class Members' claims all arise from the same course of conduct involving Travelers' alleged data security failures.

**Adequacy.** Plaintiff is an adequate representative because, as described in Section I.A.1, above, there are no conflicts between Plaintiff and Class Members. Plaintiff's interest in proving liability and damages wholly aligns with the Settlement Class's interest. Further, Class Counsel are highly experienced in data breach and other complex class actions and are adequate class counsel. *See* Section I.A.2, above.

**Predominance and Superiority.** Lastly, common questions predominate, and a class action is the superior method for resolving this case. Here, if the claims against Travelers were not settled, Plaintiff and all Class Members would have to answer the same questions regarding whether Travelers failed to adopt and maintain reasonable security measures to protect Personal Information, promptly detect the Data Incident, remedy and mitigate the effects of the Data Incident, and provide timely notification to affected persons. Class Members would need to establish the same facts for liability using similar proof and develop a common damages methodology to quantify the impact of the same harm. As these common questions are central and determine the liability and damages for all Class Members, such issues predominate over individualized issues. A class action is the superior vehicle in this case because Class Members have no substantial interest in proceeding individually given the complexity and expense of the litigation as compared to the value of each individual's likely recovery.

## III.  THE CLASS NOTICE PLAN INFORMED THE CLASS OF THE SETTLEMENT AND SATISFIED DUE PROCESS

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." FED. R. CIV. P. 23(e)(1)(B). The standard

for the adequacy of notice to the class is reasonableness. FED. R. CIV. P. 23(c)(2)(B) (for actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc.*, 396 F.3d at 114. The Class Members here have received adequate notice and have been given sufficient opportunity to weigh in on or exclude themselves from the Settlement.

The Class Notice plan, as discussed above, has been fully implemented by the Settlement Administrator. *See generally* Angeion Decl. ¶¶ 7-13. The Notice Plan, as well as the mailed notice satisfy due process. The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g.*, *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 319 (1950). The mailed notice is written in clear and concise language, and reasonably conveyed the necessary information to the average class member. *See Wal-Mart Stores, Inc.*, 396 F.3d at 114. Class Members have been advised on the nature of the Action, including the relevant claims, issues, and defenses. *See* Angeion Decl. ¶¶ 7-13. Class Members have been afforded a full and fair opportunity to consider the proposed Settlement, exclude themselves from the Settlement, and respond and/or appear in Court. The Court should find that the Class Notice plan as implemented was reasonable and satisfied due process.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court finally approve the Settlement, finally certify the Settlement Class, and enter the proposed Final Approval Order and Judgment dismissing with prejudice the claims against Travelers.

Dated: December 5, 2024
        White Plains, New York

                                        Respectfully Submitted,

                                        **GAINEY McKENNA & EGLESTON**

                                        By: */s/ Thomas J. McKenna*
                                        Thomas J. McKenna
                                        Gregory M. Egleston
                                        Christopher M. Brain
                                        260 Madison Avenue, 22nd Floor
                                        New York, NY 10016
                                        Tel: (212) 983-1300
                                        tjmckenna@gme-law.com
                                        gegleston@gme-law.com
                                        cbrain@gme-law.com

                                        Christian Levis
                                        Amanda G. Fiorilla
                                        **LOWEY DANNENBERG, P.C.**
                                        44 South Broadway, Suite 1100
                                        White Plains, NY 10601
                                        Tel: (914) 997-0500
                                        clevis@lowey.com
                                        afiorilla@lowey.com

                                        Anthony M. Christina (*pro hac vice*)
                                        **LOWEY DANNENBERG, P.C.**
                                        100 Front Street, Suite 520
                                        West Conshohocken, PA 19428
                                        Tel: (215) 399-4770
                                        achristina@lowey.com

                                        *Counsel for Plaintiff Jennifer Rand*

25

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2024, I caused a true and correct copy of the foregoing to be served on counsel of record by electronically filing it with the Clerk of the Court using the ECF system, which will send notification of such filing to the registered participants and via email to counsel for Defendant The Travelers Indemnity Company.

*/s/ Thomas J. McKenna*
Thomas J. McKenna

26